*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1781**

Chad William Mosher, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed June 15, 2015
Affirmed
Smith, Judge**

Becker County District Court
File No. 03-CV-14-268

Richard Kenly, Kenly Law Office, Backus, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory C. Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Worke, Judge; and Smith, Judge.

# U N P U B L I S H E D   O P I N I O N

**SMITH**, Judge

We affirm the district court's order sustaining the revocation of appellant's driver's license under the implied-consent law because appellant's right to counsel was vindicated and because his consent to the breath test was not coerced.

## FACTS

Just after 11:30 p.m. on January 17, 2014, a White Earth police officer arrested appellant Chad Mosher for driving while intoxicated. After transporting Mosher to the county jail, the officer began reading Mosher the implied-consent advisory around 1:00 a.m. The officer questioned Mosher as follows:

> **Officer**: Before making your decision about testing, you have the right to consult with an attorney. If you wish to do so a telephone and directories will be made available to you. If you are unable to contact an attorney, you must make the decision on your own. You must make your decision within a reasonable period of time. Do you understand that?
> **Mosher**: I got to go to the bathroom. I got to pee bad.
> **Officer**: No we have to wait here. Do you understand that?
> **Mosher**: I got to pee[. Y]es[.]
> **Officer**: If the test is unreasonably delayed or if you refuse to make a decision, you will be considered to have refused the test. Do you understand that?
> **Mosher**: Yes sir. Can I pee?
> **Officer**: Hold on[.]
> **Mosher**: I got to go.
> **Officer**: Do you understand what I have just explained?
> **Mosher**: Yes even though I got to pee. I'm not trying to [. . .]
> **Officer**: Do you wish to consult with an attorney?
> **Mosher**: I got to pee. I'm serious I got to pee.
> **Officer**: Do you wish to consult with an attorney?
> **Mosher**: Not at the moment.
> **Officer**: OK[.] Will you take a breath test?
> **Mosher**: If it is the law yes. I will do what ever you guys. Just let me go pee.

The officer administered the breath test, and the results showed a .14 alcohol concentration at 1:29 a.m. on January 18, 2014.

The Minnesota Department of Public Safety then revoked Mosher's driver's license. Mosher petitioned for rescission of the revocation, arguing that his right to

counsel was not vindicated and that he was coerced into submitting to the breath test because he was not allowed to use the restroom until he consented to the test. The district court found that Mosher voluntarily consented to the breath test, and it sustained the revocation.

## DECISION

Mosher argues that the district court erred by admitting the results of a warrantless breath test when his right to counsel was not vindicated, he was coerced to consent to the test, and the commissioner failed to establish that the results were admissible under an exception to the warrant requirement.

## I.

Mosher argues that the officer "failed to vindicate his right to counsel" and "interfered with this right by not allowing Mosher to relieve himself." Whether an officer vindicated an individual's right to counsel is a mixed question of fact[1] and law. *Groe v. Comm'r of Pub. Safety*, 615 N.W.2d 837, 841 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000). If the facts are not disputed, as here, the issue "becomes a question of law for de novo review." *See id.*

"[A]n individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Comm'r of Pub. Safety,* 473 N.W.2d 828, 835 (Minn. 1991). "Whether a person's right

---

[1] We note that our review of the record, including the audio recording, does not demonstrate a great sense of urgency on Mosher's part to go to the bathroom. We do not weigh the evidence presented to the district court and must sustain its findings unless clearly erroneous. *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002).

3

to counsel has been vindicated is determined by the totality of the circumstances . . . ." *Groe*, 615 N.W.2d at 841. The right to counsel is limited and may not unreasonably delay the test. Minn. Stat. § 169A.51, subd. 2(a)(4) (2014); *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 712 (Minn. App. 2008). In considering whether the right to counsel was vindicated, the district court may consider "the defendant's diligent exercise of the right," as well as "the length of delay since the driver was arrested" and other factors. *Mell*, 757 N.W.2d at 713 (quotation omitted).

Mosher argues that, by denying his repeated requests to use the restroom, the officer implicitly conditioned use of the restroom on waiving the right to counsel. But Mosher does not address whether the denial of his requests was reasonable given the time that had elapsed since his arrest. Because a breath test is of significantly more evidentiary value if completed within two hours of a driving-while-intoxicated arrest, *see* Minn. Stat. § 169A.20, subd. 1(5) (2014) (criminalizing driving a motor vehicle within two hours of having an alcohol concentration of .08 or more), and only 22 minutes remained for the test to be completed within that window of time, it was reasonable under the circumstances for the officer to deny any requests other than one for counsel. Mosher does not argue that the temporary restriction on restroom access endured for an excessive amount of time and presents no evidence that he had made earlier requests or that he was denied access for longer than was necessary to administer the breath test.

In addition, Mosher does not argue that he diligently exercised his right to counsel. At no time did Mosher indicate that he wished to contact an attorney or that his need to urinate was the reason he waived his right to counsel. The officer twice asked Mosher if

4

he would like to consult with an attorney, and Mosher responded that he would not after the second request.

Therefore, the district court did not err because it was reasonable for the officer to deny Mosher's request to use the restroom given the time constraint.

**II.**

Mosher also argues that the district court erred when it found that he voluntarily consented to the breath test because the officer coerced him to consent by refusing his requests to use the restroom.

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures, U.S. Const. amend. IV; Minn. Const. art. I, § 10, and any evidence obtained as a result of an unreasonable search or seizure must be suppressed, *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415-16 (1963); *State v. Askerooth*, 681 N.W.2d 353, 370 (Minn. 2004). Warrantless searches are per se unreasonable unless an exception applies, such as consent. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007); *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). A finding of voluntary consent is reviewed for clear error. *State v. Deide*, 795 N.W.2d 836, 846 (Minn. 2011).

A breath test is a search. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989); *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). To determine whether a person has voluntarily consented to a breath test, the district court must look at the totality of the circumstances. *Brooks*, 838 N.W.2d at 568. The totality-of-the-circumstances test examines primarily "the nature of the encounter, the kind of person the defendant is, and what was said and how it

5

was said." *Id.* at 569. "An individual does not consent, however, simply by acquiescing to a claim of lawful authority." *Id.* "'Consent' that is the product of official intimidation or harassment is not consent at all." *Florida v. Bostick*, 501 U.S. 429, 438, 111 S. Ct. 2382, 2388 (1991). But "involuntariness of a consent to a police request is not to be inferred simply because the circumstances of the encounter are uncomfortable for the person being questioned." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994).

Because the issue of whether denying requests to use the restroom is coercive has not yet been decided by a Minnesota court, we look to other states for guidance. Two cases are instructive.

In the first case, a Pennsylvania court stated that an officer "imposed an impermissible burden" on a driver by requiring that he complete a breath test before being allowed to use the restroom despite two requests over the course of an hour. *Carlin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 739 A.2d 656, 660 n.7 (Pa. Commw. Ct. 1999). The court noted that Pennsylvania, like Minnesota, does not have a regulation prohibiting a person from urinating prior to a breath test. *See id.*

The facts here are distinct from *Carlin*. First, Mosher also made multiple requests to use the restroom, but all his requests came within minutes of each other, not spread over an hour. Second, only approximately twenty minutes passed between Mosher's initial request and the breath test's completion. Third, if granted, Mosher's request was likely to make it impossible to complete the breath test within the two-hour window when it would have the most evidentiary value. *See Kramer v. Comm'r of Pub. Safety*, 706 N.W.2d 231, 237 (Minn. App. 2005) (noting that an observation period of 15 to 20

6

minutes is recommended prior to a breath test to avoid test invalidation). Indeed, Mosher's test was completed within mere minutes of the window's expiration.

In the second case, an Ohio court held that a driver who had asked to use the restroom was not coerced into consenting to a breath test when an officer told him he could do so once he consented to or refused the breath test. *State v. Chrzanowski*, 905 N.E.2d 266, 275-76 (Ohio Ct. App. 2008).

Unlike *Chrzanowski*, the officer did not explain that Mosher would be allowed to use the restroom shortly regardless of whether he consented to the breath test. But the officer did have a reasonable justification for denying the request due to the two-hour window, the restriction on restroom access was of a short duration, and Mosher does not allege that the officer acted coercively in any other manner or explicitly conditioned restroom access on consenting to the breath test.

We also look to the policy reasons for the exclusionary rule in making its decision. One of the purposes of the exclusionary rule is to deter police misconduct. *State v. Hardy*, 577 N.W.2d 212, 217 (Minn. 1998). But no misconduct appears to be present in these circumstances. Exclusion is not appropriate when the officer delays granting the request for a mere twenty minutes to complete the breath test within two hours of the driving conduct.

Therefore, the district court did not clearly err by finding voluntary consent because the officer reasonably delayed granting Mosher's request under the circumstances.

**Affirmed.**